**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BEARING BROKERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 5500 |
| | ) | |
| v. | ) | |
| | ) | Judge Manning |
| GADDIS, INC., | ) | Magistrate Judge Cole |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiff, Bearing Brokers, Inc. ("Plaintiff"), individually and as a representative of a Settlement Class of similarly situated persons, by class counsel, Edelman, Combs, Latturner & Goodwin, LLC, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement with defendant Gaddis, Inc. ("Gaddis" or "Defendant"). This Court preliminarily approved the Agreement on September 14, 2011.

Subsequent to the entry of the preliminary approval order, ProFax, Inc. ("ProFax"), attempted to send notice via facsimile to 9,961 unique fax numbers. Defendant's list of Class Members contained 9,961 unique fax numbers. Transmissions that were initially unsuccessful were re-dialed a minimum of two times. There were a total of 1,194 attempts that were unsuccessful after at least two tries. A total of 8,768 transmissions were ultimately successful (88.01% success rate). See *Declaration of Andrew Barnett, Dkt. No. 84*.

Due to an unexpectedly low response rate, and the high rate of success in transmission of the class notice, plaintiff sought leave to resend notice by fax to the class. Plaintiff's counsel paid for the second round of notice at their own expense. This motion was

granted on December 6, 2011.

On December 9, 2011, ProFax attempted to send notice to 9,743 fax numbers. This list represented those Class Members who did not submit Claim Forms as of the date that notice was sent. Transmissions that were initially unsuccessful were re-dialed a minimum of two times. There were a total of 2,031 attempts that were unsuccessful after at least two tries. A total of 7,712 transmissions were ultimately successful (79.15% success rate). See *Declaration of Andrew Barnett, Dkt. No. 98*.

In addition, the Class Notice and Settlement Agreement were posted on www.edcombs.com. See *Declaration of John Pasquali, Dkt. No. 85.* The Class Notice for the second round of notice that was sent to the class was also posted on www.edcombs.com. See *Declaration of John Pasquali, Dkt. No. 99.*

**No** objections were filed or otherwise submitted by any of the Class Members. A total of **2** entities submitted requests for exclusion. See *Dkt. Nos. 96-97.* A total of **380** valid and timely claim forms were submitted either postmarked or faxed by the January 9, 2012 deadline. No claims were submitted after the claim form deadline, January 9, 2012. See *Declaration of Stephen Rettger, Dkt. No. 100.* Each valid claim represents a unique fax number on the Fax List.

There are 345 persons/entities that submitted a claim form with one valid fax number. There are 10 persons/entities that submitted claim forms with more than one valid fax number. Of these 10 persons/entities, 5 submitted claims from the same business but with different locations/physical addresses. In sum, there are a total of **380** Claims submitted by 365 unique addresses. See *Declaration of Stephen Rettger, Dkt. No. 100.*

## I.  OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.

Plaintiff originally filed this action in the Circuit Court of Cook County against Gaddis.  The case was removed to this Court by Defendant.  Plaintiff's complaint alleged that Gaddis violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2, ("ICFA") and state common law (conversion) and sought damages individually and on behalf of a putative class.

After litigating the case for approximately one year and taking discovery to identify the members of the Class, including out of state third-party discovery, the parties reached a class settlement agreement.  The parties did attend a settlement conference before Magistrate Judge Cole, but were unsuccessful at reaching an agreement at that time.  The parties and defendant's insurer, the Underwriters to Lloyd's Syndicate 1200, negotiated the settlement at arms-length and in good faith.

The Agreement was subsequently presented to the Court for preliminary approval. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## II.  THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.  The Preliminary Approval Order.

On September 14, 2011, this Court entered an order granting preliminary approval of the Agreement reached between the parties.  In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the Agreement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Order further established a procedural framework for the final approval of the Agreement.  The Order required that notice be sent to the

members of the Class that was conditionally certified by the Court, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set a February 14, 2012, final approval hearing.

> **B.   The Value of the Agreement.**

Plaintiff and Defendant entered into a class action Settlement Agreement.  More specifically, the terms of the Agreement are as follows:

> 1.   <u>Settlement Fund</u>. Subject to Court approval, Gaddis shall cause the

Underwriters to Lloyd's Syndicate 1200, to pay a total of $287,500 into a Settlement Fund.  The Settlement Fund shall be distributed as follows:

> > (a)   Payment of $4,500 to Plaintiff Bearing Brokers, Inc., as an incentive award for its services as a class representative, and in addition to its recovery as a Settlement Class Member.

> > (b)   Payment of attorney's fees in an amount not to exceed $86,250, which represents 30% of the Settlement Fund to Plaintiff's Counsel.

> > (c)   Reasonable costs of notice and administration of the Settlement Fund.  According to the affidavit of Andrew Barnett, the costs of notice incurred and paid to date are $544.93.  Strategic Claims Services estimates that it will cost $1,238.75 to administer the Settlement Fund.

> > (d)   After payments set forth in subparagraphs (a) - (c) of this Paragraph, the balance of the Settlement Fund shall be divided *pro rata* without a cap.  Each claim has an approximately value of $513.  Eight Settlement Class Members submitted valid claims containing more than one number on the Fax List.   Settlement Class Members shall be paid by check void 60 days after the date it is issued.

> 2.   <u>Uncashed Settlement Checks/Unclaimed or Undistributed Settlement</u>

<u>Funds</u>.  If the Court allows the incentive award to plaintiff and the attorney's fees and costs

4

petitioned for, the Settlement Fund should be entirely disbursed. Any remaining funds would result from Settlement Class Members who do not timely negotiate their settlement checks or the fact that checks have to be rounded down to the nearest cent. In the event there are any unclaimed and undistributed Settlement Funds, the parties have agreed and request that any amount of the Settlement Fund that remains unclaimed or undistributed will be distributed equally among the *cy pres* recipients selected by the parties. Any remaining or unclaimed funds shall be distributed in equal amounts to the *cy pres* recipients designated by the parties. Plaintiff elects Domestic Violence Legal Clinic as a *cy pres* recipient. Defendant elects Chicago Volunteer Legal Services as a *cy pres* recipient.

Domestic Violence Legal Clinic is a not-for-profit corporation providing free civil legal assistance and referral services to low income victims of domestic violence in Cook County. Its stated mission on its website, www.dvlcchicago.org, is to help their clients "achieve safety from abusive relationships."

Chicago Volunteer Legal Services is a pro bono civil legal aid provider to the poor and working poor Chicagoans. According to its website, www.cvls.org, its stated mission is "to coordinate, support and promote the voluntary pro bono legal representation of the Chicago area's poor and working poor."

Each of the Court approved *cy pres* recipients will share equally as beneficiaries to any unclaimed or undistributed settlement funds. The payments to the *cy pres* recipients will occur not less than 30 days after the expiration of the void date on the settlement checks.

3. <u>Attorney's Fees and Costs</u>. Defendant agrees not to oppose Plaintiff's counsel's request for attorney's fees in the amount of $86,250, to be paid from the Settlement

5

Fund. The attorney's fees sought represent 30% of the Settlement Fund. In addition, plaintiff's counsel is requesting reimbursement of reasonable costs of notice and administration.

**C.     No Objections Were Received.**

Neither plaintiff's counsel, nor Counsel for Defendant received any objections to the settlement. This should be viewed as an endorsement of the Agreement by the Class.

**D.     Two Requests for Exclusion Were Received.**

Two Class Members have requested exclusion from the Settlement Class: Pal-Con, Ltd. and Agis, LLC. <u>See</u> *Dkt. Nos.: 96-97.* The number of opt-out requests is less than 0.02% of the numbers on the Fax List. It should be viewed as an endorsement of the Agreement by the Class.

**III.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT.**

The Agreement satisfies all the requirements of Rule 23.

**A.     Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

According to Defendant's records, there are 9,961 fax numbers that were sent 53 unique faxes promoting the commercial availability or quality of Gaddis' property, goods or services on or after December 31, 2007 through and including August 11, 2010. Each of the 9,961 fax numbers received at least one but most likely more than one of the unique faxes. ProFax caused Notice to be sent by facsimile successfully to 8,767 Class Members on the first round of notice and to 7,712 Class Members on the second round of notice. Finally, the Notice and Settlement Agreement were posted on <u>www.edcombs.com.</u>

The Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer*

*Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

**B.      Rule 23(a)(2) - The Claims Of The Class Arise
From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claim arose from common questions:  Whether Defendant engaged in a pattern of sending unsolicited fax advertisements; and whether by doing so they violated the TCPA and Illinois state law (ICFA and conversion).  These common questions satisfy Rule 23(a)(2).

**C.      Rule 23(a)(3) - Named Plaintiff's Claims are
Typical Of the Claims Of The Class Members.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class

7

members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)(the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

    In this case, Plaintiff's claim arose from the same question of law as those of the Class Members:  Whether Defendant's sending of unsolicited fax advertisements violated the TCPA and Illinois state law.  Rule 23(a)(3) is plainly satisfied in this case.

  **D.**  **Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly And Adequately Protected The Interests Of The Class.**

    The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations:  (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class.  *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

    As set forth in the Declaration of Daniel A. Edelman (Appendix B), Plaintiff's counsel is experienced in class action litigation.  In addition, Plaintiff does not have any interests in conflict with the Class Members.  Therefore, the named Plaintiff and its counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

  **E.**  **The Class Is Appropriate Pursuant to Rule 23(b)(3).**

    Class certification is appropriate under Rule 23(b)(3) where:  (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy.  Because

the claims at issue address the alleged practice of Defendant in sending unsolicited facsimiles, there are no individual issues and common questions predominate. A class action presents a superior method to fairly and efficiently adjudicate all claims of the Class in this case, within the meaning of Rule 23(b)(3). The Agreement provides Class Members the opportunity to obtain a portion of the statutory damages provided for by the TCPA without the filing of numerous identical lawsuits.

### F. The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2. The complexity, length, and expense of continued litigation;

3. The amount of opposition to the settlement among class members;

4. The presence of collusion in gaining a settlement;

5. The stage of the proceedings; and

6. The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)). The class

action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

Plaintiff believes that it had a strong chance of prevailing if this case had gone to trial. Defendant disputes Plaintiff's claims and believes that it had strong defenses to Plaintiff's claims. In addition, transmission reports did not exist for the entire time period that defendant's faxes were sent.

Importantly, defendant's only collectible asset was its single year insurance policy with the Underwriters of Lloyd's Syndicate 1200. However, there was a question of whether coverage applied to Plaintiff's claims under Defendant's insurance policy. The availability of insurance coverage is a contested issue under South Carolina law, under which there is no controlling authority. Therefore, there were risks associated with further litigation and risks, including the possibility of an uncollectible judgment, associated with the outcome of any related insurance declaratory judgment action.

In order to avoid the uncertainty presented by any litigation, the parties agreed to settle the dispute between them. The arguable strength of the Class's claims compare favorably to the terms of the settlement, and the availability of any recovery to the Class Members, set forth above, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement easily satisfies the third *GE Capital* factor because less than 0.02% of Class Members have elected to exclude themselves from the settlement and no Class Member has objected to the settlement. There is no evidence of any collusion in reaching the settlement. To the contrary, the above-described payment amounts to Plaintiff and Class Counsel compare

favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor. Settlement Class Members will receive a recovery of approximately $513, which is approximately 102% of the maximum statutory damages ($500) that could be awarded for a non-willful violation of the TCPA.

In this case, Class Members received at least 1 but likely more than 1 fax of the 53 unique faxes from Defendant. Pursuant to the Agreement, there was no cap on the Class Members' recovery to account for the fact that *some* of the Class Members *may* have received more than one of Defendant's faxes. Plaintiff does not know how many Class Members received all of Defendant's faxes, because not all of the transmission reports were recoverable from the Defendant, or its telephone service provider. However, this Settlement Agreement allows payment of claims based on valid fax number(s) and, _not_ on the number of faxes sent to each Class Member. Accordingly, the class recovery provides those Settlement Class Members who received one or more of Defendant's faxes, a recovery of approximately 102% of the statutory damages for a non-willful violation.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties engaged in discovery necessary to litigate this case to conclusion and to proceed with settlement discussions. The parties engaged in written discovery and out of state third-party discovery and engaged in a settlement conference before Magistrate Judge Cole. Prior to the expiration of the discovery deadline, the parties engaged in negotiations in an attempt to resolve this case. Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

11

**IV.**     **THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.**

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees of $86,250, which represents 30% of the Settlement Fund of $287,500.  Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method.  *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig*., 264 F.3d 712 (7th Cir. 2001).

**A.**     **The Common Fund Method**.

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace.  Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different.  It  is well established that when a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re: Synthroid Marketing Litigation*, 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re: Synthroid Marketing Litigation*, 264 F.3d at 718.

The Seventh Circuit in *Synthroid* explained that determination of the market rate

for the legal fees should be based in part on the following factors:

> The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.

*Id. at* 721.

Plaintiff's counsel took this case on a contingent fee basis over 1 ½ years ago, and thus was faced with a significant risk of non-payment. A fee request of 30% of the Settlement Fund is also consistent with the marketplace. The market rate for contingent fees in consumer cases such as this is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

This case was prosecuted by Plaintiff's counsel on a contingent fee basis with no assurance of any fee. In undertaking to prosecute this case on that basis, Plaintiff's counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the

13

attorney's contingent fee risk is an important factor in determining the fee award.").

Class Counsel filed a well researched complaint alleging claims for relief under federal law and state law. Class Counsel engaged in written discovery, including out of state, third-party discovery. Near the conclusion of the discovery deadline, the parties reached a Settlement Agreement. As discussed above, the Settlement Class Members will each receive approximately $513 per fax number from the Settlement Fund. In light of the work performed in this matter, Class Counsel's request for $86,250, which represents 30% of the Settlement Fund, is reasonable.

In addition, Plaintiff's counsel requests reimbursement of reasonable costs. To date, the following costs have been incurred in sending the class notice: $544.93 (notice by fax). See *Declaration of Andrew Barnett, Dkt. Nos. 84.* Plaintiff's counsel does not seek reimbursement costs incurred in the second notice sent by fax. It is estimated that it will cost $1,238.75 to issue and mail the settlement checks to Class Members. (Appendix C).

Accordingly, Class Counsel believes the amounts requested are reasonable and requests approval of $86,250 in attorney's fees, plus reasonable costs of notice and administration.

## V.   CONCLUSION.

For all the reasons set forth above, Plaintiff individually, and as a representative of the Settlement Class of similarly situated persons, by Class Counsel, requests that this Court grant final approval of the Agreement and enter the parties' proposed final approval order, attached hereto as Appendix A.

Respectfully submitted,

s/ Heather Kolbus

14

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Heather Kolbus, certify that on February 3, 2012,  I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties named below:

Eric S. Mattson
emattson@sidley.com

Alison V. Potter
apotter@sidley.com

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)